We'll hear the first case, New Jersey Carpenters Health Fund. May it please the Court, Christopher Johnson for appellants FHFA and Freddie Mac. Under the HERA statute, FHFA as conservator succeeded to Freddie Mac's legal claims. This is particularly true regarding mortgage-backed securities claims like those here, which as this Court noted in FHFA versus UBS, Congress had specifically contemplated when enacting HERA. As this Court said in the UBS case, whether, where, and how to assert those claims are decisions that Congress entrusted to FHFA. Indeed, they're policy choices where FHFA must balance the needs of the housing markets against things like the health and stability of the financial markets. And here, the choice that FHFA made in 2011 with respect to the Novistar bonds that Freddie Mac purchased was not to sue Wells Fargo. How do you respond to the argument, sir, that once FHFA had made a decision, as it was thought to do, deemed to have done in this case by not opting out, that the statute 4617F should not be understood to deny that decision its full effect? So FHFA never had the opportunity to opt out. It was never given notice by the class plaintiff, and that's undisputed. As I noted, under the HERA statute --" Ginsburg. It's a conservator for Freddie Mac. Waxman. Excuse me? Ginsburg. It's a conservator for Freddie Mac. Waxman. It is indeed. Ginsburg. And Freddie Mac got notice. Waxman. Freddie Mac got notice, but Freddie Mac is a separate entity from FHFA. Freddie Mac is a private corporation under conservatorship of a federal agency. And nothing in HERA makes Freddie Mac an agent of FHFA for things like service. So your position is that unless FHFA got notice themselves and said, we agree to be part of this class action, that any notice or inaction by Freddie Mac could not in any way create jurisdiction by the court? That is absolutely correct, Your Honor. In fact, the district court here held that FHFA was a member of the class. And notwithstanding that, and certainly class plaintiff and the defendants all knew that FHFA was the conservator for Freddie Mac. Freddie Mac was not just some investor in these certificates. In the two bonds that are at issue, it was almost certainly the largest single investor. It had 50 percent of one of the issuances and 40.5 percent of the other issuance. And so FHFA's conservatorship of Freddie Mac was publicly known in 2008. It was actually known to both class plaintiffs, which had excluded FHFA and Freddie Mac from another MBS settlement, and also known to the defendants who were litigating with FHFA on behalf of other parties. Let me ask you a practical question. Even though you didn't get notice with regard to opting out of the class, they say that your client knew that this litigation was proceeding, obviously, and yet didn't take any action to not be part of the class. So what was the reason for not bringing this to the district court's attentions earlier and saying we shouldn't be in this class? Your Honor, FHFA did not become aware of the opt-out deadline. Not the opt-out deadline, but the fact that FHFA was, that these claims were being considered part of the class. Certainly, at that level, that was known. Right? Not about the opt-out deadline, but why wouldn't you go in early and say, we shouldn't even be part of this class? This is wrong. You don't have jurisdiction over us. FHFA was unaware of the class notice, the deadlines. The plaintiffs cite some cases in which FHFA referenced the New Jersey carpenters' action, and they say, oh, well, FHFA must have known, you know, clearly knew about this case. What they cite goes back to 2013 at a time when the class plaintiff was still litigating whether these two bonds were part of the case. The district court had dismissed the claims respecting the 2006-3 and 2006 issuances. The plaintiff took that case up to the Second Circuit, and that was not resolved until 2015. That's after the things that they cite where, you know, FHFA may have referenced the Second Circuit's opinion in some other filing. But even then you were sort of fighting over the opt-out and the extension. You could have had a much bigger argument that you're making to us today, which was like, there's no subject matter jurisdiction here. That is correct, Your Honor. That opt-out and class notice relate solely to personal jurisdiction. Personal jurisdiction is irrelevant, absent subject matter jurisdiction. And 4617F, under this Court's jurisprudence, strips courts of subject matter jurisdiction to affect or restrain the FHFA's exercise of conservative powers. And there can be no question that the judgment at issue here, which purports to enjoin FHFA from litigating against Wells Fargo and seeks to release those claims, constitutes a restraint of the FHFA's conservative powers. One of the arguments they make is that if you interpret the statute, any adverse action against a claim that basically they have to win every lawsuit, that if you interpret the statute this broadly guarantees victory for any Freddie Mac claim. What's your response to that? Your Honor, no one is making that argument. The 4617F applies to FHFA's litigation power the same as it applies to any of the other powers under HERA. Those different powers are indistinguishable with respect to 4617F. The issue is once FHFA elects to sue, it is subject to all rules and procedures applicable to any litigant other than those that have been specifically altered by HERA or another statute. But the decision of whether to sue, which is the issue here, is a decision that is protected by 4617F. And this Court's ---- then your best argument is what? That the notice is irrelevant because the district court lacked subject matter jurisdiction to restrain or affect the conservator. Are there any judicial actions that are permissible under 4617F? There are judicial actions if FHFA invokes the Court's jurisdiction. The 4617F has an exception for except as requested by the director. And so when the FHFA, for example, the 17 different lawsuits that were brought before Judge Cote, when FHFA commences those actions, that's done at the request of the director. And FHFA is then subject to the Court's jurisdiction. But other than that, 4617F prohibits the Court from restraining the conservatorship. And that is consistent with this Court's decision in town of Babylon. It's consistent with it, Volges v. RTC. All of the HERA and FIREA jurisprudence makes clear that the only issue is whether the power under consideration is a conservator power under HERA, and the power to assert claims on behalf of the GSEs, this Court recognized in the UBS decision and in the FHFA v. NMURA decision were powers firmly rooted in HERA. I see my time is up. May it please the Court, Joe Laitman for New Jersey Carpenters. What Mr. Johnson just said and reiterates in his papers is that there's no question that the plain language of 4617F, that all, he interprets it, all class action orders from day one restrains the FHFA. First of all, if you're given an option, just as a matter of logic, not to have the class action order apply, it doesn't constrain you. But this record is actually ---- Well, there's two issues with that. One is that they're saying Freddie Mac got that right. Well, Freddie Mac, this is a securities act. And the statute requires an affirmative act, not an inaction, but an affirmative act. It specifically says at the approval of, right? Yeah. But the judicial action, they had an opportunity to reject the class action order. The perfect example is something Your Honor indicated, which is they say repeatedly they were constrained by the appointment of plaintiff's lead counsel in 2009. We know that's not true, because in 2011, they hired their own lawyers. They entered into negotiations with UBS not once, but ten times. Obviously, they weren't ---- That's a sub-issue, but the ---- would you concede that they have exclusive control under the statute of the legal claims, right? We've said that in UBS that they get to decide where and when to bring legal claims that belonged to Freddie Mac, right? Agreed? That's correct. So by what you're saying is notwithstanding the statute that suggests that they then have to affirmatively decide where those claims are brought, that through the inaction of Freddie Mac, they could lose control of those claims, right? Isn't that what you're arguing to this Court, that because Freddie Mac didn't opt out, they lose their exclusive control over these claims? However, yeah, but the point is what our position is, is that Freddie Mac, they had an obligation, a minimal obligation as conservator to make sure if they really cared about these class-action litigations, to make sure ---- That's like a negligence argument. This requires an affirmative act by them of releasing ---- of saying these claims should be brought here. And you're saying, well, they were negligent. They should have checked with Freddie Mac about this. What would your position be if they didn't know anything about this lawsuit at all? Suppose they knew nothing about this lawsuit, and Freddie Mac failed to opt out. What's your position on whether or not this statute would prevent them from having to live with this class-action settlement? What would your view be on it? Our position is that they would not because of how you interpret the statute under O'Melveny. O'Melveny says ---- They would not. When you say they would not, they would not have the claim. They would lose that claim? They would lose that claim. They would lose the claim if ---- How does that put them in exclusive control of the assets and the claims that belong to Freddie Mac if Freddie Mac can forfeit the claims on their behalf? Freddie Mac, they have the obligation. Let's look at this from the point of view of our, as the plaintiff. There were 500 claimants. It's not our burden under class-action litigation, under Eisen and Phillips, to investigate the conservator relationship of all 500 claimants and figure out, okay, this one deserves notice, this one doesn't deserve notice. That's the job of the conservator. Well, they pointed out under the rule you have to give any notice to anyone who's part of the class, and they say that the district court, and I look back at the order, said FHFA is in the class, right? By way of Freddie Mac as the purchaser. So if they're part of the class, why wouldn't you have to give them notice directly then? Because the class definition is purchasers. FHFA is not a purchaser. Freddie Mac is the purchaser. We give notice to every purchaser. There could have been 50 conservators, 50 trustees. That's not our job. That's the job of the conservator or the trustee to make sure, if they're really doing their job, that if they care about these litigations. And obviously, they went into these ten amendments because they wanted to see the outcome of this class litigation. They were citing the case. They were tracking the case. And then, basically, they missed the deadline. But they're the last entity that should be given a break. Well, they're saying that notice went to the wire room of Freddie Mac, and that's why they missed the deadline by two weeks, right? Isn't that their position of why this happened? Yes, but we served three times, and we served to the transfer agent indicated to us where to serve it, 1551 Parkward and Road. That is what Freddie Mac puts out on the website that says, if you have questions about Freddie Mac debt securities, send it to 1551 Parkward and Road. That's what we did. It can't be that it's the job of the class action counsel and the administrator to investigate who, beyond the purchaser, and the purchaser is in the Securities Act class definition, who, beyond that, is also entitled to do it. Do we have to go into the mailroom and make sure, as they say, that it gets to Mr. X or Ms. Y or goes to a conservator or a trustee? That's imposing a burden on us that no court has ever done. But particularly in this case, they — Congress has imposed the burden here by creating a statute that says they control these claims and they have to do something affirmatively for them to be litigated. That's who — that's what makes this different than all these other situations that you're talking about, right? The difference, however, is they told the district court, they told the late Judge Batts, that they are subject to the jurisdiction of the district court. They actually said that. If you — in the record, if you go to A-693 and A-695, the counsel for Freddie Mac said, and this is a quote, had Freddie Mac been given adequate notice of the class certification, it would have — it would have opted out, said it again, had — repeated itself. Had Freddie Mac received adequate and timely notice, it would have requested exclusion from the settlement class by the date ordered by this Court. They understood that they were — they had an obligation to opt out of the class. They didn't do it. It was only when they realized that they actually got no — that Freddie Mac got notice that all of a sudden you got this statutory argument, which, by the way, comes nine years after they were established. As they say, they're the largest mortgage-backed securities purchaser in the nation. They were involved in multiple MBS class actions. They filed opt-out exclusions in Countrywide and Wells Fargo, yet they wait nine years to advance this radical idea that Federal District Courts have no jurisdiction from day one. Any other orders do not apply to Freddie and Fannie. You — as I understand it, you asked us to restrict any ruling against you to the judgment with respect to the FHFA and Freddie Mac alone. And so does that mean that what you're saying is that we could vacate the settlement only with respect to the FHFA claims? I think in the reply brief, that is what the FHFA is seeking, that the settlement order with respect to them be reversed. They're not seeking to have the entire settlement order overturned. And that's — and we agree with that position. Thank you. May it please the Court. Alan Turner representing the defendant at the lease. Could I just ask you that last question, that if we were to decide against you, the plaintiffs have asked us to disturb the judgment only to the extent that it includes the Freddie Mac claims in this settlement. As I read your brief, you don't really address that point. What is your view? Your Honor, if the judgment approving the settlement were disturbed in any way, including by allowing FHFA and Freddie Mac to be excluded from the class, it would effectively undo the settlement, because the settlement agreement covers the entirety of the class except those who timely opt out. It is a settlement that included a blow-up provision whereby if more than a certain percentage of the class timely opted out, then the defendants could blow up the settlement because it would not have the value that they had ascribed to it at the time that they entered into it. The district court said that — Was that provision implicated by them? If they had opted out, would that provision have been implicated or the threshold would not have been reached? Yes. It would have been surpassed. It would have been significantly surpassed. So what the objector is asking for is essentially to undo the economics of the settlement, to opt out, and to bring a claim for an additional amount on top of that. Your Honor, I'd like to respond to the question that Chief Judge Kasserman first asked counsel for FHFA, which was whether FHFA's decision not to sue back when it started negotiating a tolling agreement with Wells Fargo had any effect. It does have effect, because there, FHFA was aware of this lawsuit. It elected not to sue. And in the same way as Mr. Johnson acknowledged that once FHFA elects to sue, it is subject to the same litigation rules as everybody else, in the same way if FHFA elects not to sue and to sit back and wait to see how the class action develops, it is also bound by the same litigation rules. We know that because the Supreme Court teaches us in O'Melveny and Myers that a conservatee or a receivee is subject to the same litigation rules as everybody else post-conservatorship as it is pre-conservatorship. That is very important here, Your Honors, because the conservator steps into the shoes of Freddie Mac here. It takes those claims subject to the same defenses as would have applied prior to the conservatorship occurring, except if the governing statute expressly says otherwise. And here, HERA does expressly say otherwise with respect to certain litigation rules, and we list them at pages 20 to 21 of our brief. Those include both substantive and procedural rules. I know, but those rules all relate to once they're in a litigation, how certain procedures would or would not apply to them. This is a question of whether or not they are subject to this litigation at all. And the language is it has to be at the request of the director. And you're saying to us that notwithstanding this affirmative requirement, we should infer that it was implicit approval because they did not act. And I'm not sure how you get that from that language, at the request of. Isn't that what you're arguing? No, I'm not arguing that. They implicitly were approving this going forward because they didn't do anything. But it seems to require an affirmative act on their part of saying, we are part of the — we agree that this is where this litigation, this claim should be brought. The appellees are not arguing that there was any request by the director. Or any affirmative act. There's no affirmative act. Correct. But the question, Your Honor, is whether — not whether FHFA can make a decision to bring a claim or not. Of course, FHFA is empowered to make a decision, but the via — And where to bring it. Where to bring it. Not just whether to make, right? Correct. And they, for whatever reason, decided they did not want to be part of that litigation at this point. They had their tolling agreement in place, and there may have been a strategic reason for it or not. But it doesn't — there's no exceptions because they made a strategic reason not to affirmatively enter that litigation. The viability of the claim falls to be determined by the same rules as applied to Freddie Mac, a private corporation, post-conservatorship as it did pre-conservatorship. That is what O'Melveny requires. Once they agree to be part of the litigation, that's the part that I'm having trouble with. That they have to agree to be part of the litigation. And that was never sought and obtained in this situation. I mean, we have all these cases here that say you cannot limit their contract-making function, right? Correct. Okay. So their response to that, which I think is a compelling one, how can you limit their litigation-making function? They have two different functions. They can enforce contracts, and they can litigate. And even though there are all these cases that say you can't infringe upon their contracting, courts, you have to stay away from their contract-making function. What you're suggesting to us is that courts without their permission can infringe upon their litigation-making function. Courts are not being asked to infringe upon their litigation-making function. The courts are being asked to determine the viability of those claims by the same rules as apply post-conservatorship as apply pre-conservatorship. That is what O'Melveny requires. Were it otherwise, FHFA or the FDIC, because the same statute applies to the FDIC, would be in a situation where they — O'Melveny doesn't really address the situation. O'Melveny talks about putting them in the shoes of Freddie Mac, and they have all the same claims and rights that Freddie Mac has. It doesn't say that when you have a statute like this that that should be ignored. That doesn't address this, right? We're not suggesting that 4617F should be ignored. We are saying that there was no restraint on FHFA's exercise of its conservatorship powers or functions because it had the ability to decide whether, when, and how to bring a lawsuit. It had the ability to appoint counsel to Freddie Mac. It had the ability over an eight-year period to bring a lawsuit against the underwriters here. And it didn't. That is something that it could have done but chose not to do. It made the decision not to bring a suit. The normal rules of class-action litigation under Rule 23 are unchanged by HERA. Were it otherwise, HERA would have expressly said so, and it has not. I see that my time is up, unless Your Honors have other questions. Thank you. Your Honor, the O'Melveny issue, or members of the panel, the O'Melveny issues are washed away by this Court's 1992 decision in Volchers v. RTC, where this Court held that FIREA 1821J, which is identical to 4617F, stripped courts of jurisdiction to enjoin the RTC from selling the assets of a failed bank and receivership. Prior to the receivership, the failed bank did not have the protection of 1821J. RTC stepped into the shoes of the failed bank, and once it did, it was able to assert that protection. The appellees say more than a dozen times throughout their brief, and you heard more of it today, that this is basically just a routine class-action. Whatever was routine about this class-action went out the window in September 2008, when FHFA became conservative for Freddie Mac. At that point, and this goes to Mr. Laitman's point about what the class counsel should have done, at that point it was incumbent upon class counsel to recognize that as a matter of law, HERA gave to FHFA the legal claims associated with Freddie Mac's Novastar bonds. And because class plaintiffs neglected to recognize this publicly known fact and this issue of law, the district court certification orders ended up violating at least two federal statutes that prevent private law firms from representing the federal government. At root, though, isn't this case about what might be viewed as a bureaucratic failure? I mean, this case really, this whole case is built on that. Your Honor, if there was any, the district court said that someone slept on their rights. If there was any sleeping on rights, it was by Freddie Mac. Freddie Mac did not have control of the claim at that point. The claim belonged to FHFA as a matter of law. They're saying FHFA made a strategic decision to see how the case turned out. What's your response to that? My response is that's completely wrong. In the tolling agreement, which they extended through to last year, they preserved the right to bring the claim. It was a tolling agreement. They preserved the right to bring the claim, and they agreed during the term of that agreement not to sue Wells Fargo. And so it was not that FHFA neglected to sue. They were preserving the claim because they had settled 36 of the 38 bonds covered by the tolling agreement with Wells Fargo. They had every expectation that they were going to be settling these two bonds directly with Wells Fargo. And there's no way to interpret from that tolling agreement the fact that FHFA preserved its claims, explicitly preserved its claims, its ability to sue, that it intended the claims to be resolved in the class action. If that were the case, the tolling agreement could have expired years ago. I just want to go back to Chief Judge Katzman's question about what the — if we would agree with you what the relief would be. Their position is that this blow-up provision, blow-out provision would have been triggered if Freddie Mac's claims had been excised. So isn't that a problem? Your Honor, we've never had access to the blow provision. It's not part of the record. We don't know what it says. I do think that — If it were such a provision, wouldn't that be problematic to excise — Your Honor, if there was a settlement here, there could be a settlement without FHFA and Freddie Mac as part of the class. They reached a deal. You back those two bonds out of the deal, and I'm sure there can be another deal — another settlement reached. But the — I see my time's up. If I might just address one last point about — One last point. I'm sorry? One last point. Yes. I think it was — counsel for the defendants said that Rule 23 is not specifically accepted, or there's no exception for Rule 23 in HERA that's not specifically referenced in HERA. But in UBS, this Court held that 4617b12, the statute of limitations provision, displaced the statute of proposed in the 1933 Securities Act, even though the Securities Act is nowhere mentioned in HERA either. What the Court said in UBS was it relied on language that said the statute of limitations in HERA was for any action brought by FHFA as conservator. 4617b12 would apply to that. Any meant any in 4617b12, and it means the same in 4617f. The Court — the district court was prohibited from taking any action to restrain conservative powers, whether that was through a class action or otherwise. So is it your position, just in sum, that — that HERA relieves FH — FHA of the burden of complying with, for example, local page limits, court-ordered deadlines? Not at all, Your Honor. As I said before, when FHFA elects to litigate, it is subject to all such rules. But the decision of whether to litigate or whether to preserve the claims, preserve its statute of limitations so it can negotiate a settlement with a defendant, that decision falls within its litigation power. And the litigation power, like all other powers in HERA, are protected by 4617f. Your position is it can't be forced to make a decision? Correct.